UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

EDWARD B. WATKINS,

Plaintiff,

v.                                                    Action No. 3:10–CV–98

SUNTRUST MORTGAGE, INC.

Defendant.

MEMORANDUM OPINION

I.  INTRODUCTION

THIS MATTER is before the Court on defendant SunTrust Mortgage, Inc.'s

(hereinafter "SunTrust") Motion to Dismiss plaintiff Edward B.Watkins' (hereinafter

"Watkins") Complaint alleging violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 et

seq. (hereinafter "TILA").  (Doc. No. 4.)  In his Complaint, Watkins alleges that SunTrust

failed to meet its disclosure obligations under the TILA when, in conjunction with the

refinancing of a home mortgage, it provided him with forms appropriate for a new credit

transaction and not a refinancing.  Watkins contends that these forms did not adequately

describe the effect that rescission would have on his prior mortgage and that due to this

inadequacy, his right to rescind was revived by the commencement of foreclosure

proceedings.  Watkins also contends that SunTrust acted wrongfully when it refused to

cancel its security interest in Watkins' property after he communicated his intent to rescind.

SunTrust argues that the mere substitution of forms does not establish plausible basis for

1

finding that the TILA's disclosure requirements were violated and that since Watkins'
pleadings are thus insufficient to state a claim upon which relief can be granted, they must
be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

After reviewing the filings of the parties and hearing oral arguments, the Court
concludes, for the reasons stated below, that SunTrust's Motion should be granted.

## II. BACKGROUND

In considering a complaint on a motion to dismiss, the Court "take[s] the facts in the
light most favorable to the plaintiff" but "need not accept the legal conclusions drawn from
the facts" nor need it "accept as true unwarranted inferences, unreasonable conclusions, or
arguments".  Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); see also Ashcroft v.
Iqbal, 129 S.Ct. 1937, 1949 (2009).  As this Complaint relies upon facts contained in
documents outside of the pleadings, portions of these documents shall also be considered
where relevant.  See, e.g., Davis v. George Mason Univ., 395 F.Supp.2d 331, 335 (E.D.Va.
2005).

### A. Watkins' Pleadings

Watkins alleges that on or about May 27, 2007, he and his then wife Danielle
Watkins refinanced the mortgage on their primary residence at 5000 West Seminary
Avenue in Richmond, Virginia.  SunTrust was allegedly the lender in this credit transaction.
Both Watkins and his wife allegedly signed a note evidencing the credit transaction, which
was secured by a deed of trust and lien on their home.  Watkins alleges that SunTrust was
an existing creditor and that funds from this refinancing were used to discharge the original

indebtedness. Watkins alleges that SunTrust provided the couple with a document entitled "Notice of Right to Cancel" (hereinafter "the Notice") stating, among other things, that the Watkins were entering into a transaction that would result in the bank taking a security interest in their home and that they had a right under federal law to cancel this transaction within three days from either the date of the transaction or the date that they received certain disclosures from SunTrust. The Notice also stated that:

> "If you cancel this transaction, the mortgage, lien or security interest is also canceled. Within twenty (20) calendar days after we receive your notice, we must take steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction."

The Notice went on to describe the tender process that would take place during rescission, stating:

> "You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impracticable or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to [a specified address]. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation."

Watkins alleges that, at some point following the credit transaction, he separated from his wife and moved out of the home. Watkins also alleges that, at some point prior to December of 2009, the couple fell behind in their payments on the note and received notice of a pending foreclosure sale. Watkins finally alleges that, on December 14, 2009, he sent a notice of rescission to SunTrust and offered to tender the funds necessary to complete

rescission by liquidating a retirement account, obtaining contribution from his wife, or selling the home. The foreclosure sale was allegedly canceled, but Watkins alleges that SunTrust did not recognize his rescission within the 20 days described in the Notice.

Watkins contends that his second mortgage constituted a "refinance credit transaction" within the meaning of the TILA. Watkins also contends that because a pre-existing credit transaction had taken place, SunTrust was required to provide the couple with the additional information regarding the limited effect of rescinding this second transaction. Watkins further contends that SunTrust should have fulfilled this obligation by providing a notice form substantially similar to that set out in Model Form H-9 of Appendix H to Federal Reserve Board Regulation Z, <u>see</u> 12 C.F.R. § 226, Appendix H-9 (<u>hereinafter</u> "Regulation Z" and "Model Form H-9). Watkins finally contends that by providing a form based upon Model Form H-8, which is typically used with new lines of credit, SunTrust failed to meet its TILA obligations and that since these obligations were not met, the right to a TILA rescission is revived because of the pending foreclosure.

Watkins claims that he is thus entitled to statutory damages in the amount of $2,000 based on SunTrust's failure to make the proper disclosures and to rescind the credit transaction in a timely fashion. Watkins also claims that he is entitled to a declaratory judgment on the validity of his rescission and the amount he is required to tender, enforcement of that rescission, and an exercise of the Court's equitable discretion to allow him a reasonable amount of time to acquire the funds necessary to complete the tender process. Finally, Watkins asks for his attorneys' fees and costs.

### B.  Posture of Pleadings

Watkins filed this Complaint on February 16, 2010.  Summons for SunTrust were executed and returned to the Court by May 21, 2010 and SunTrust filed this Motion to Dismiss on May 27, 2010.  Watkins' Opposition was filed on June 11, 2010, and SunTrust's Reply was filed on June 16.  A hearing on the matter took place on June 28, 2010.

### III.  DISCUSSION

### A.  Standard of Review

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims set forth in the pleadings.  See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  To be legally sufficient, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact".  Francis, 599 F.3d at 192-3 (citing Fed.R.Civ.P.8(a)(2)).  The pleadings need not be supported by evidence, but they must "state a claim for relief that is plausible on its face."  Id. at 193 (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  A plausible claim must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation".  Iqbal, 129 S.Ct. at 1949.  Under the new pleading standard, a plaintiff must provide "factual enhancement" not just "naked assertions" regarding the elements of a cause of action.  See Francis, 588 F.3d at 193.

### B.  Watkins' Truth In Lending Act Claim

The TILA regulates the relationship between lenders and borrowers in order to facilitate the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). To that end, the TILA requires certain disclosures to be made to borrowers, including a disclosure of the borrower's right to rescind the transaction either within three days of closing, or within three years of closing if no disclosure is made regarding the right of rescission. See §§ 1635(a) & (f).[1] Where a foreclosure proceeding is underway, a borrower may also rescind the credit transaction where "the form notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice". § 1635(i)(1)(B). The broad reach of these provisions are evidence of what the Supreme Court has recognized as a Congressional decision to shift the risk of uncertainty regarding the terms of a credit transaction from the borrower to the lender. See Mourning v. Family Pubs. Serv. Inc., 411 U.S. 356, 377 (1973); also Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983)(remedial statute to be construed strictly in favor of consumers, no proof of harm necessary); and Huff Stewart-Gwinn Furniture Co., 713 F.2d 67, 69 (4th Cir. 1983); Barber v. Kimbrell's Inc., 577 F.2d 216, 220 (4th Cir. 1978). A failure to make the required disclosures, or a failure to recognize a valid rescission, also subjects a lender to statutory damages of up to $1000 per offense. See § 1640(a)(2)(A)(ii).

_____

[1]While the TILA is silent regarding how a right of rescission may be exercised when a credit transaction is entered into jointly, its enabling regulations state that the exercise of the right by one borrower operates as an exercise of the right by all borrowers. See 12 C.F.R. § 226.23(a)(4).

As previously noted, the Board of Governors of the Federal Reserve System (hereinafter "the Board") is authorized to publish model forms for use in common transactions. See §§ 1604(a) & (b). Pursuant to this delegation of authority, the Board has published in Regulation Z a set of guidelines for home mortgage disclosures. See 12 C.F.R. 226 et seq. Any lender who makes use of these forms in the appropriate transactions "shall be deemed to be in compliance" with the disclosure requirements of the TILA, see § 1604(b), although failure to use these forms does not give rise to liability so long as a "substantially similar" disclosure is made. See 12 C.F.R. § 226.23(b)(2). Under Regulation Z, lenders are required to inform borrowers regarding specific aspects of their right to rescind. See 12 C.F.R. § 226.23(a). The required notice must "conspicuously disclose" the lender's "retention . . . of a security interest", the borrower's "right to rescind the transaction", how the borrower may "exercise the right to rescind" the transaction, the "effects of rescission", and "the date the rescission period expires." 12 C.F.R. § 226.23(b)(1). Regulation Z specifically defines the "effects of rescission" as the voiding of the security interest created by the transaction and the refunding of any finance charges, the timely return of these funds and completion of any steps necessary by the lender to reflect the termination fo the security interest, and the reciprocal tender of the security interest by the lender and the loan proceeds by the borrower. See 12 C.F.R. § 226.23(d).

The two model forms at issue in this case are set out in Appendix H of Regulation Z . Model Form H-8 contains the following language:

"NOTICE OF RIGHT TO CANCEL
Your Right to Cancel

You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____; or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction. You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at (creditor's name and business address).

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of (date) (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____

Consumer's Signature Date"


Meanwhile, Model Form H-9 contains additional language:

"NOTICE OF RIGHT TO CANCEL
Your Right to Cancel
You are entering into a new transaction to increase the amount of credit previously provided to you.

Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of this new transaction, which is _____; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

<u>If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.</u> [emphasis added]

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.
If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

How To Cancel
If you decide to cancel this new transaction, you may do so by notifying us in writing, at

_____
(Creditor's name and business address).

You may use any written statement that is signed and dated by you and state your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of

_____
(Date)
_____
(or midnight of the third business day following the latest of the three events listed above).

If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____
Consumer's Signature"

The gravamen of Watkins' Complaint is that Model Form H-8 is insufficient to give a borrower in a refinancing notice of the effects of exercising the right to rescission. According to this theory, because the rescission of a refinancing applies only to the additional credit extended over and above the amount owed on the original loan, <u>see</u> 12 C.F.R. §

226.23(f)(2), the effects of rescinding a refinancing described in Model Form H-9 are fundamentally different than the effects of rescinding a credit transaction described in Model Form H-8.  Relying heavily on the Seventh Circuit's decision in <u>Handy v. Anchor Mort. Corp.</u>, 464, F.3d 760 (7th Cir. 2006)(lenders provision of Model Form H-8 and Model Form H-9 insufficient to meet TILA disclosure obligations), Watkins concludes that since SunTrust provided only a Model Form H-8, which did not discuss the effect of rescission on the prior indebtedness, it failed to give him clear and conspicuous notice of his rights, thus allowing this right of rescission to be revived in foreclosure.

Watkins concedes that the Court considered a very similar set of arguments before dismissing a TILA rescission claim in <u>Larrabee v. Bank of America</u>, __F.Supp.2d __, 2010 WL 2089260 (E.D.Va. May 20, 2010).  In May of this year, Judge Hudson was faced with a TILA rescission claim in which a plaintiff asserted that, among other violations, the use of a TILA disclosure form titled "Different Lender" was a violation of the disclosure requirements where the loan was made by a successor in interest to the first lender, but the disclosure form did not reveal that rescission would not unwind the prior credit transaction.  <u>See id.</u> at *2.  The plaintiff in that case, like Watkins, argued that as a remedial statute, the TILA's requirements should be strictly construed against lenders, while the defendant in that case, like SunTrust here, argued that the terms of the TILA should be reasonably construed and equitably applied to both parties.  <u>See id.</u> at *5.  Under the plaintiff's theory, this variant language preserved the right to rescind the transaction during foreclosure, under the defendant's theory, it did not.  <u>See id.</u>  Judge Hudson acknowledged that while the Fourth

Circuit had found that the TILA requires "absolute compliance and strict enforcement", this is not incompatible with the proposition that "the Act's requirements should . . . be reasonably construed and equitably applied." Id. at * 3 (citing Am. Mort. Net. v. Shelton, 486 F.3d 815, 819 n. 4 (4th Cir. 2007)).  Judge Hudson also noted that other circuits have rejected the proposition that the TILA was intended by Congress to expose lenders to "overwhelming liability for relatively minor violations", McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 424 (1st Cir. 2001)(reversing grant of class certification to group of plaintiffs seeking TILA rescission) or that "Congress would . . . have [courts] adopt a hyper-technical reading of the TILA", Smith v. Highland Bank, 108 F.3d 1325, 1327 n. 4 (11th Cir. 1997)(summary judgment for defendant bank that combined form acknowledging receipt of right to rescission notice and form certifying waiver of that right).  Larrabee, 2010 WL 2089260 at *4.

Nevertheless, Judge Hudson recognized that the Seventh Circuit in Handy had found that where a lender provided a borrower with two rescission notices, one of which contained language describing a refinancing transaction and the other describing a new line of credit, it had not met its TILA disclosure obligations and that rescission was an appropriate remedy. Larrabee, 2010 WL 2089260 at *3-5.  Judge Hudson noted that while the panel in Handy, had been "sympathetic" to the argument that where a borrower had been provided with both forms, she could not possibly claim ignorance of her rights, it concluded that the "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement, especially with regard to the

'effects of rescission'" because those effects were different in each case.  Id. at *5 (citing Handy, 464 F.3d at 764); see also Porter v. Mid-Penn Consumer Discount Co., 961 F.2d 1066, 1073-78 (3rd Cir. 1992)(finding that disclosure form which failed to notify "cash strapped" borrowers that right to rescind refinancing only applied to increased amount of loan did not constitute clear and conspicuous notice of rights).  While recognizing that this might be a necessary consequence of the Seventh Circuit's "hyper-technical" construction of the TILA, Judge Hudson ultimately found that it was not in keeping with the principles that the Fourth Circuit had applied when construing the statute.  Id. at *6-7.

Judge Hudson concluded that the most instructive precedent on this question was the First Circuit's decision in Santos-Rodriguez v. Doral Mort. Corp., 485 F.3d 12, 16 (1st Cir. 2007), which held that because the model forms in Appendix H are not mandatory, a disclosure may satisfy the TILA disclosure requirements so long as it recited the five elements listed in Regulation Z at § 226.23(b)(1).  See Larrabee, 2010 WL 2089260 at *4-5 (citations ommitted); see also Veale v. Citibank, F.S.B., 85 F.3d 577, 580 (11th Cir. 1996)(Model Form H-8 form was sufficient during refinancing, perfect notice not required where notice was clear and conspicuous).  Applying this standard, Judge Hudson concluded that while the notice given the plaintiff in Larrabee might not have been "perfect", insofar as the notice recited the essential elements of a TILA disclosure set forth in Regulation Z, it satisfied the requirements of the statute.  2010 WL 2089260 at *5.  While the exact content of the notices provided in Larrabee is not evident from the language of Judge Hudson's decision, at the very least his decision stands for the proposition that the

use of a form describing a new credit transaction in the context of a refinancing is not sufficient, without more, to render a TILA violation plausible.

SunTrust argues that when the rule of <u>Larrabee</u> is applied in this case, the Court must find that it gave Watkins clear and conspicuous notice of his rights and dismiss the Complaint for failing to state a claim. Watkins concedes that <u>Larrabee</u> is the controlling precedent but suggests that it should either be distinguished or set aside. Because the Court believes both that <u>Larrabee</u> is the controlling precedent and that a close reading of the statute confirms that Watkins was given clear and conspicuous notice of his TILA rights, the Court finds that SunTrust has the better of these arguments.

First, even the strictest construction of the TILA cannot read out the limiting language of § 1604(b), which specifically states that Board regulations may not be "construed to require a creditor or lessor to use any . . . form or clause" that the Board proposes and specifically allows for the possibility that lenders may delete extraneous information from forms or rearrange their terms, so long as the substance, clarity, and sequence of disclosures is not upset. § 1604(b). Regulation Z does not purport to do more than this, stating that TILA disclosure compliance can be achieved either through using the model forms or by providing a "substantially similar notice". 12 C.F.R. § 226.23(b)(2). Thus, the Court's ruling in <u>Larrabee</u> that mere variance from the language used in Appendix H does not establish a TILA violation is well grounded in the applicable law and appears directly on point in this case.

Second, a close reading of Regulation Z reveals that the "effects of rescission" may not be the expansive concept the Seventh Circuit suggested it was in <u>Handy.</u> <u>See</u> 464 F.3d at 764. Regulation Z explicitly defines the "effects of rescission" as the voiding of the security interest created by the transaction and the refunding of any finance charges, the timely return of these funds and completion of any steps necessary by the lender to reflect the termination of the security interest, and the reciprocal tender of security interest by the lender and the borrowed sum by the borrower. <u>See</u> 12 C.F.R. §§ 226.23(b) & (d). Thus, while the broader implications of rescinding a first mortgage may be different than the implications of rescinding a mortgage that refinanced a prior one, <u>see</u>, <u>e.g.</u>, <u>Handy</u>, 464 F.3d at 764, these implications do not seem to be the concern of either Regulation Z or the TILA. By following the rule of <u>Santos-Rodriquez</u> adopted in <u>Larrabee</u>, this Court is neither endorsing nor rejecting any particular method of reading the TILA, it is simply applying the terms of the statute as directed by the Board in Regulation Z.

While it would seem obvious that a lender would be well advised to use a Model Form H-8 in a new extension of credit and Model Form H-9 when refinancing an existing mortgage, the Court cannot conclude that a lender's use of one form in place of the other, without more, is in and of itself a violation of the TILA. Since Watkins has not alleged that the disclosures made at the time of the refinancing were otherwise deficient, the Court must conclude that he has failed to show his entitlement, in either law or fact, to the relief he seeks.

## IV.  CONCLUSION

Given the Complaint and the precedents which govern this Court's interpretation of the TILA, the Court finds that Watkins has failed to state a claim upon which relief plausibly can be granted.  As Watkins has failed to state a claim, SunTrust's Motion to Dismiss is GRANTED and Watkins' Complaint DISMISSED.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this  14th  day of July 2010